UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL P. LOTIEF

VERSUS

BOARD OF SUPERVISORS OF
THE UNIVERSITY OF LOUISIANA
SYSTEM D/B/A UNIVERSITY OF
LOUISIANA AT LAFAYETTE, ET AL.

CIVIL ACTION

NO. 18-991-JWD-EWD

## RULING AND ORDER ON MOTION TO INTERVENE

Before the Court is a Motion to Intervene (the "Motion to Intervene")[1] filed by Chelsea Lotief, Doni Sanders, Miranda Grotenhuis, Sarah Koeppen, and Teryn Haley Pritchett (collectively, the "Proposed Intervenors"). The Motion to Intervene is opposed by defendants, the Board of Supervisors for the University of Louisiana System; Dr. E. Joseph Savoie, individually and in his official capacity; Dr. Jessica Clarke Leger, individually and in her official capacity; and Dr. Bryan Maggard, individually and in his official capacity (collectively, "Defendants"),[2] and Proposed Intervenors have filed a Reply.[3]

For the reasons set forth herein, the Motion to Intervene[4] is denied.[5]

---

[1] R. Doc. 18.

[2] R. Doc. 24. Per the Motion to Intervene, plaintiff, Michael P. Lotief ("Plaintiff" or "Lotief"), "consents to the filing and granting" of the Motion to Intervene. R. Doc. 18, p. 1.

[3] R. Doc. 27.

[4] R. Doc. 18.

[5] Magistrate judges may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to intervene is considered a non-dispositive motion." *Johnson v. Qualawash Holdings, LLC*, No. 2:12CV-885, 2013 WL 3050021, at *2 (W.D. La. June 17, 2013) (citing *S.E.C. v. Koirnman*, Civ.A. 3:04CV1803, 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006)). *See also*, *Stephens v. State Farm and Cas. Co.*, Civil Action No. 07-2433, 2010 WL 1292719, at *3 (E.D. La. March 8, 2010) ("The portion of Road Home's motion seeking leave to intervene is a non-dispositive matter which I may address by order.").

I.     Background

On September 20, 2018, Plaintiff, previously the head coach of the Women's Softball team at the University of Louisiana at Lafayette ("ULL") filed a Petition for Damages (the "Petition") in state court seeking damages arising from, *inter alia*, Defendants' alleged violation of Title IX of the Educational Amendments of 1982, 20 U.S.C. § 1681, *et seq*.  Specifically, Plaintiff alleges that Defendants terminated his employment in retaliation for Plaintiff's "reporting numerous forms of gender discrimination as well as the unequal treatment of female athletes as compared to male athletes."[6]  In addition to Plaintiff's Title IX retaliation claim,[7] Plaintiff additionally asserts claims of defamation,[8] violation of his First and Fourteenth Amendment rights,[9] discrimination in violation of the Americans with Disabilities Act,[10] wrongful conversion of property,[11] and breach

---

[6] R. Doc. 1-1, p. 38, ¶ 160.  In paragraph 58 of his Petition, Plaintiff sets out a list of "non-exclusive circumstances" of "unlawful discrimination against female athletes" that Plaintiff "consistently opposed and reported" including ULL's alleged failure to provide equal and adequate medical care to female softball players, ULL's refusal to adequately care for and maintain appropriate and equitable playing facilities, and ULL's refusal to hire and/or properly compensate softball athletic staff.

[7] R. Doc. 1-1, pp. 37-40, ¶¶ 158-166.

[8] R. Doc. 1-1, pp. 40-43, ¶¶ 167-180.  Plaintiff alleges that "ULL propagated false, misleading, and damaging information through various local news sources following Lotief's termination in an attempt to publically (sic) discredit and humiliate him."  R. Doc. 1-1, p. 41, ¶ 168.

[9] R. Doc. 1-1, pp. 43-44, ¶¶ 181-188 (asserting claims pursuant to 42 U.S.C. § 1983 based on Plaintiff's "clearly established right to protest, oppose, and report unlawful discrimination against females in college athletics guaranteed to him pursuant to the 1st Amendment to the United States Constitution and Title IX" and that Plaintiff "further enjoyed the clearly established right to his good name and reputation pursuant to the 14th Amendment (liberty) to the United States Constitution and to his public employment by contract (property) pursuant to the 14th Amendment to the United States Constitution.").

[10] R. Doc. 1-1, pp. 44-47, ¶¶ 189-201 (alleging, *inter alia*, that Plaintiff "endured multiple 'hostile' and 'cruel' attacks about his trach and speaking voice and tone.").

[11] R. Doc. 1-1, pp. 47-48, ¶¶ 202-211 (alleging that after being placed on administrative leave, he was locked out of the softball offices and facilities and has not had access to his personal belongings, that ULL "to this day hold[s] numerous pieces of equipment, personal items, and documents" belonging to Plaintiff, and that "ULL is presently in possession of roughly $20,000.00 that belongs to Lotief with respect to a summer camp program….").

of his employment contract.[12]  On November 1, 2018, Defendants removed this action based on 28 U.S.C. § 1331 in light of Plaintiff's assertion of federal law claims.[13]

On January 3, 2019, Proposed Intervenors filed the instant Motion to Intervene.[14]  In their proposed Complaint in Intervention, Proposed Intervenors, who were students at ULL and members of the softball team at the time Lotief was coaching, allege that "[t]hroughout their tenure as students and softball players [they] experienced inequities and discrimination due to their gender (female) in violation of Title IX."[15]  Proposed Intervenors allege that they complained of the same inequities raised in Lotief's Petition[16] "in accordance with university policies" and "further complained to Lotief."[17]  Proposed Intervenors allege that "[a]fter Lotief became aware of the inequities and discrimination between female and male athletics at ULL, Lotief alerted the ULL administration to these numerous gender-based inequities faced by ULL's Women's Athletic Programs (specifically Softball), as compared to Men's Athletics"[18] and that "[f]ollowing Lotief's raising of the Title IX complaints, he was placed on administrative leave."[19]

Proposed Intervenors further allege that following Lotief's placement on administrative leave, they again "voiced their concerns regarding Title IX violations that each had experienced"

---

[12] R. Doc. 1-1, pp. 48-49, ¶¶ 212-215 (alleging Plaintiff "enjoyed a five year contract which term recommenced if he won a regional competition.  As such, as of the date of his termination, he had five years remaining.").

[13] R. Doc. 1, p. 2, ¶ 1.

[14] R. Doc. 18.  On December 13, 2018, Defendants filed an Opposition to Petition of Intervention, for Declaratory Judgment and for Damages in response to a Petition of Intervention that was pending before the state court at the time of removal.  R. Doc. 13.  The undersigned subsequently ordered Proposed Intervenors to file a Motion to Intervene pursuant to FRCP 24 and allowed Defendants to file an amended opposition to the anticipated motion pursuant to the regular briefing delays provided by the Court's local rules.  R. Doc. 15.

[15] R. Doc. 18-1, p. 3, ¶ 6.

[16] *Compare*, R. Doc. 18-1, ¶¶ 7-20 with R. Doc. 1-1, ¶ 58(a)-(m).

[17] R. Doc. 18-1, ¶ 25.

[18] R. Doc. 18-1, ¶ 25.

[19] R. Doc. 18-1, ¶ 26.

and "further stated that each believed that Lotief's administrative leave was the result of his complaints and his reiteration of their complaints regarding Title IX violations committed by ULL."[20]  Rather than generate an internal investigation, Proposed Intervenors allege that their complaints regarding Lotief's placement on administrative leave and their assertions of gender inequities "generate[d] retaliation against each Intervenor and further retaliation against Lotief"[21] and that following Lotief's termination, "Gerry Glasco became the coach for the ULL Softball team, and Defendants began a pattern of systematic retaliation against Intervenors, which retaliation caused all to leave the team."[22]  Additionally, Proposed Intervenors allege that they filed complaints with the Office of Civil Rights and thereafter issued a press release regarding their claims, and that following that press release, ULL "issued a public statement, defaming and slandering Intervenors."[23]  Based on Defendants' alleged actions, Proposed Intervenors assert claims of gender discrimination pursuant to Title IX,[24] retaliation pursuant to Title IX,[25]

---

[20] R. Doc. 18-1, ¶ 28.

[21] R. Doc. 18-1, ¶ 28.

[22] R. Doc. 18-1, ¶ 34.

[23] R. Doc. 18-1, ¶¶ 35-36.

[24] R. Doc. 18-1, ¶¶ 43-50 ("The Intervenors, as members of the women's softball team suffered numerous adverse actions, which are detailed hereinabove, and such other instances of gender discrimination within ULL athletics as will be more fully shown at trial of this matter.").

[25] R. Doc. 18-1, ¶¶ 51-55 (alleging that "Intervenors complained of, protested, reported and opposed gender discrimination and inequities faced by ULL's Women's Athletic Programs (specifically Softball), as compared to Men's Athletics" and that Defendants "took several adverse actions against the Intervenors because of said protected activities.").

defamation,[26] violation of their First Amendment and Fourteenth Amendment rights,[27] conversion of property,[28] and intentional infliction of emotional distress.[29]

Although Proposed Intervenors note that they have filed a separate lawsuit "for protective purposes only,"[30] they move to intervene in this suit as of right pursuant to Fed. R. Civ. P. 24(a)(2) and alternatively, to permissively intervene pursuant to Fed. R. Civ. P. 24(b).

## II.     Law and Analysis

### A.  Intervention of Right

For purposes of deciding the Motion to Intervene, the Court accepts Proposed Intervenors' factual allegations as true.[31]  "Although the movant bears the burden of establishing its right to

---

[26] R. Doc. 18-1, ¶¶ 56-58.

[27] R. Doc. 18-1, ¶¶ 59- (asserting claims pursuant to 42 U.S.C. § 1983 based on Defendants' retaliation that "would chill an ordinary person of ordinary firmness of continuing to engage" in protected activities of "complaining of these inequities and this gender discrimination, testifying and offering evidence in various investigations, and bringing attention to the official misconduct of the defendants" and alleging "Defendants have denied Intervenors access to Intervenors' property.").

[28] R. Doc. 18-1, ¶¶ 69-70.  Proposed Intervenors allege that they "were locked out of their locker room and, for many days, were not allowed to return to practice or to retrieve their personal belongings."  R. Doc. 18-1, ¶ 34(a).

[29] R. Doc. 18-1, ¶¶ 71-72.

[30] R. Doc. 18, p. 1, n. 1.  Proposed Intervenors explain that "[i]n the event this intervention is granted, Petitioners will dismiss the separate lawsuit."  R. Doc. 18, p. 1., n. 1.  On March 25, 2019, Proposed Intervenors' separate lawsuit was removed to this Court.  *Chelsea Lotief, Doni Sanders, Miranda Grotenhuis, Sarah Koeppen and Terryn Haley Pritchett v. Board of Supervisors of the University of Louisiana System dba University of Louisiana at Lafayette, E. Joseph Savoie, individually and in his official capacity, Jessica Clarke Leger, individually and in her official capacity, Bryan Maggard, individually and in his official capacity*, Civil Action No. 19-173, United States District Court, Middle District of Louisiana (the "Players' Action").  The Petition filed in the Players' Action includes many of the same factual allegations as set out in the proposed Complaint in Intervention.  *Compare*, Players' Action, No. 19-173, R. Doc. 1-1, p. 10, ¶ 7 – p. 14, ¶ 18 *with* proposed Complaint in Intervention, No. 18-991, p. 5, ¶ 26 – p. 10, ¶ 38.  On May 28, 2019, the Players' Action was reassigned to the undersigned Magistrate Judge based on the two suits having "similar parties, facts and legal issues…."  Players' Action, No. 19-173, R. Doc. 15.  Notwithstanding the similar parties, facts and legal issues raised by both suits, whether Proposed Intervenors should be allowed to intervene in the instant suit raises a different question – *i.e.*, whether these suits should be tried together (rather than whether coordination and consistency, for example, during the discovery process, should occur).

[31] *Texas v. U.S.*, 805 F.3d 653, 656 (5th Cir. 2015).

intervene, Rule 24 is to be liberally construed[,]" and the "inquiry 'is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate.'"[32]

Pursuant to Fed. R. Civ. P. 24(a)(2), a party is entitled to intervene in a pending lawsuit when: (1) the motion to intervene is timely;[33] (2) the potential intervenor asserts an interest that is related to the property or transaction that is the subject of the action in which he seeks to intervene; (3) the potential intervenor is so situated that disposition of the case may as a practical matter impair or impede his ability to protect his interest; and (4) the parties already in the action do not adequately protect the potential intervenor's interest.[34]

With respect to the "interest" requirement, the Fifth Circuit has interpreted Rule 24(a)(2) "to require a 'direct, substantial, legally protectable interest in the proceedings.'"[35]  "Although 'this gloss on the rule' may not 'provide any more guidance than does the bare term 'interest' used in Rule 24 itself,' [Fifth Circuit] cases reveal that the inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way."[36]  "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for

---

[32] *Brumfield v. Dodd*, 749 F.3d 339, 341-342 (5th Cir. 2014) (internal citations omitted).  *See also*, *Sierra Club v. Epsy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained.") (internal quotation marks omitted).

[33] "Whether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).  Proposed Intervenors and Defendants agree that the Motion to Intervene is timely.  *See*, R. Doc. 18-2, p. 5 ("Clearly, then, this application for intervention is timely."); R. Doc. 24, p. 4 ("With the exception of the timeliness of the Motion to Intervene, Petitioners do not meet any of the remaining requirements and are therefore precluded from intervention as of right.").

[34] *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001).  Here, because the undersigned finds that Proposed Intervenors do not have a sufficient interest in the main action to justify their intervention pursuant to Rule 24(a), the undersigned has not analyzed the third and fourth prongs of Fed. R. Civ. P. 24(a)(2).  *See*, *NOPSI*, 732 F.2d at 470 (holding that "the City officials were properly denied intervention as of right because they lacked the character of interest required by Rule 24(a)(2)."); *Defense Distributed v. United States Department of State*, 1:15-cv-372, 2018 WL 3614221, at * 2 (W.D. Tex. July 27, 2018) ("Because the Court finds that Movants do not meet the second prong – the requirement of a sufficient interest in the main action – the Court need not analyze the remaining prongs.").

[35] *Texas v. U.S.*, 805 F.3d at 657 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)).

[36] *Id.* (internal citations omitted).

ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other."[37] As an example of an insufficient interest, in *New Orleans Public Service, Inc. v. United Gas Pipe Line Company* ("*NOPSI*"),[38] the Fifth Circuit found that city officials' "purely economic interest" were insufficient to support intervention in a contract dispute over fuel prices between a private utility company and a seller of natural gas.[39]

In contrast to *NOPSI*, "an interest that is concrete, personalized, and legally protectable is sufficient to support intervention."[40] Although a property interest is "almost always adequate" "because it is concrete, specific to the person possessing the right, and legally protectable," "non-property interests are sufficient to support intervention when, like property interests, they are concrete, personalized, and legally protectable."[41] As further explained by the Court in *Texas v. U.S.*,

> in *League of United Latin American Citizens, District 19 v. City of Boerne*, 659 F.3d 421 (5th Cir.2011), we held that an intervenor had a "legally protectable interest" where he sought to protect "his right to vote in elections to choose all five city council members." *Id*. at 434. The intervenor was not seeking to protect a property interest, but his interest in vindicating his own personal right to vote was sufficiently concrete and specific to support intervention. Similarly, in *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir.2012), we reversed the district court's denial of intervention

---

[37] *Id*. (citing *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir.1998) ("It is settled beyond peradventure, however, that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right."); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir.1998) ("[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought."); *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir.1995) ("It is something more than a mere 'betting' interest, but less than a property right." (citations omitted)); David L. Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv. L.Rev. 721, 729 (1968) ("This language indicates that one must have more of a stake in the proceeding than simply a concern with the general precedent value of the decision in wholly unrelated litigation....").

[38] 732 F.2d 452 (5th Cir. 1984).

[39] *Id*. at 465 (quoting *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) ("After all, every electricity consumer in New Hampshire and every person who does business with any electricity consumer yearns for lower electric rates.")).

[40] *Texas v. U.S.*, 805 F.3d at 658.

[41] *Id*.

by petition organizers who "engineered the drive that led to a city charter amendment over the nearly unanimous, well funded, and longstanding opposition of the Mayor and City Council." *Id*. at 294. Although the intervenors had no property interest in the continued vitality of the amendment, we held that the intervenors' specific and "unique" interest "in cementing their electoral victory and defending the charter amendment itself" satisfied Rule 24(a)(2). *Id*.

Moreover, although an asserted interest must be "legally protectable," it need not be legally enforceable. In other words, an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim. For example, in *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 537, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the Supreme Court held that a union member was entitled to intervene by right in a suit brought by the Secretary of Labor to invalidate an election of union officers, even though federal law prohibited the union member from initiating his own suit. Another example is *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir.1994), in which the city of Dallas entered into a consent decree with an employee group, agreeing to give a specified number of promotions to black officers who would not otherwise be chosen for promotions. A group of non-black firefighters sought to intervene, claiming that the decree interfered with their own promotion opportunities. Even though the non-black fire fighters did not have legally enforceable rights to promotions, we held that they satisfied Rule 24(a)(2) because "[a] decree's prospective interference with promotion *opportunities* can justify intervention." *Id*. (emphasis added).[42]

---

[42] *Id*. at 658-659. *See also*, *id*. at 659-660 (citing *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (non-black, non-Hispanic police officers had sufficient interest to intervene in suit in which police department entered into a consent decree with black and Hispanic officers based on intervenors' claim that the decree adversely affected their interests in having equal access to promotional opportunities; "[a]lthough the non-black, non-Hispanic officers were not legally entitled to any promotions, their interest in being considered for a promotion was sufficient to support intervention."); *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) (parents whose children received school vouchers could intervene as of right in suit between Louisiana and the federal government over the voucher program because "a *potential* decree…threatens a prospective interference with educational opportunities.")). Based on this precedent, the Fifth Circuit found that aliens who alleged they were likely to receive grants of deferred action under the "Deferred Action for Parents of Americans and Lawful Permanent Residents" ("DAPA") program could intervene pursuant to FRCP 24(a)(2) in a suit brought by multiple states against the United States and several officials of the Department of Homeland Security seeking injunctive relief to prevent implementation of DAPA. In so finding, the Court explained that intervenors' interest in receiving deferred action under DAPA was sufficiently particularized, and that intervenors had "an interest in the employment opportunities that would be available to them if they are granted deferred action and employment authorization" as well as an "interest in directing the upbringing of their United States-citizen children." *Id*. at 660. *See also*, *id*. at 661 ("In short, the Jane Does have a real, concrete stake in the outcome of this litigation – if DAPA is invalidated, the Jane Does will lose their opportunity to obtain deferred action and their opportunity to obtain employment authorization. The Jane Does are not individuals seeking to defend a governmental

Here, Proposed Intervenors assert that "the 'property or transaction that is the subject of the action' in this case is the violation of Title IX and the retaliation and attacks on those who sought to end those violations"[43] and that they have an interest in that "transaction" that is "more particularized and personal" than the interest that was found sufficient in *City of Houston*.[44] The undersigned disagrees.

First, Proposed Intervenors' assertion that the "transaction" that is the subject of Plaintiff's suit is generally "the violation" of Title IX and "retaliation and attacks on those who sought to end those violations" paints too broad a stroke. Although both Plaintiff and Proposed Intervenors allege that gender inequalities existed, the events that form the basis of Plaintiff's claims are not the same as those which form the basis for Proposed Intervenors' action. In his Petition, Lotief alleges that he was a "whistle blower"[45] who "consistently opposed and reported ULL's unlawful discrimination against female athletes,"[46] and that he was ultimately terminated for engaging in this protected activity.[47] Plaintiff alleges that Defendants relied on his "post-game 'language'" after two games and "his alleged poking" of a ULL strength coach[48] as a pretext for his termination, and that other "similar but separate events" involving athletics at ULL show how the individual defendants were arbitrary and biased in handling purported complaints against him.[49] Plaintiff

---

policy they support on ideological grounds; rather, they are the intended beneficiaries of the program being challenged.").

[43] R. Doc. 18-2, p. 6.

[44] R. Doc. 18-2, p. 7.

[45] R. Doc. 1-1, ¶ 159.

[46] R. Doc. 1-1, ¶ 58.

[47] R. Doc. 1-1, ¶¶ 158-166. Similarly, Plaintiff alleges that he "enjoyed the clearly established right to protest, oppose, and report unlawful discrimination against females in college athletics guaranteed to him pursuant to the 1st Amendment to the United States Constitution and Title IX." R. Doc. 1-1, ¶ 183.

[48] *See*, R. Doc. 1-1, ¶ 59.

[49] *See*, R. Doc. 1-1, ¶¶ 61-65.

further alleges that Defendants failed to consider exculpatory evidence in his favor (including a statement signed by the softball team, including Proposed Intervenors, noting "the team's belief that Lotief was being targeted and retaliated against for standing up for female athletes")[50] and that various circumstances support his position that the reasons for his termination were pre-textual.[51] Based on these allegations, the "transaction that is the subject of" Plaintiff's action is *his termination and the reasons therefore* (*i.e.*, whether Plaintiff was terminated for foul language/inappropriate poking or instead was terminated due to his complaints of gender inequality). While proof that the actual inequalities complained of by Plaintiff existed may lend credence to his allegation that he engaged in protected activity, Plaintiff will not have to prove such inequality actually existed.[52] Moreover, while Proposed Intervenors may be called as witnesses regarding those circumstances, their presence in this action is not necessary in order to fully analyze Lotief's claims. In contrast, Proposed Intervenors have asserted claims for

---

[50] R. Doc. 1-1, ¶ 101.

[51] *See*, *e.g.*, R. Doc. 1-1, ¶ 103 ("Corbello then presented her findings to Savoie who had already made up his mind he was going to fire Lotief and he did not really want the exculpatory statements in favor of Lotief."); ¶ 111 ("None of the exculpatory statements or documents were included in the final HR investigatory findings; said another way, all of the exculpatory statements and documents were excluded from the HR investigatory findings."). *See also*, R. Doc. 1-1, ¶ 164. Additionally, Plaintiff asserts that "ULL actively propagated false, misleading, and damaging information through various local news sources following Lotief's termination in an attempt to publically (sic) discredit and humiliate him." R. Doc. 1-1, ¶ 168.

[52] *Minnis v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College*, 55 F.Supp.3d 864, 884 (M.D. La. Oct. 21, 2014) ("To establish a prima facie case of Title IX retaliation, a plaintiff must show that he or she participated in activity protected by Title IX and that the defendant took an adverse action against him or her because of that activity." (citing *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 184 (2005); *Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011)). The Fifth Circuit has stated, in the context of a Title VII retaliation claim, that a plaintiff need not prove that the employer's "practices were actually unlawful, but only that [plaintiff] had 'a reasonabl[e] belief that the employer was engaged in unlawful employment practices.'" *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981), *cert. denied* 455 U.S. 1000 (1982)). *See also*, *Zacherl v. City of La Marque, Texas*, Civil Action No. 3:11-cv-518, 2013 WL 2458628, at * 4 (S.D. Tex. June 6, 2013) (explaining with respect to a Title VII retaliation claim that "the 'good faith' rule provides that if a plaintiff complained about discrimination on the basis of race or sex or another protected category, and was subject to retaliation as a result, she can maintain a retaliation claim even if it turns out she cannot prevail on the underlying claim of discrimination."). "The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'" *Collins v. Jackson Public School District*, 609 Fed. Appx. 792, 795 (5th Cir. 2015) (unpubl.) (quoting *Lowery v. Texas A&M Univ. Sys.,* 117 F.3d 242, 252, n. 18 (5th Cir. 1997)).

discrimination under Title IX, which will require proof of actual gender inequality.[53] While Proposed Intervenors also assert claims for Title IX retaliation, the alleged retaliatory acts specified in Proposed Intervenors' pleading occurred after Lotief's termination.[54] In short, Proposed Intervenors have no direct, personalized interest in Plaintiff's suit.

Second, although Proposed Intervenors rely heavily on *City of Houston* to support their right to intervene in this action, Proposed Intervenors have not articulated a character of interest like that at issue that case. In *City of Houston*, intervenors were individuals who successfully "launched a political campaign, spending over $200,000 of their personal funds, to force the City to cease using" a red-light camera system. Intervenors' efforts led to a charter amendment being placed on a ballot which, despite vigorous opposition by the City, was passed. On the day the City Council enacted an ordinance reflecting the election result, the City terminated its contract with the company running the red-light system and filed suit in federal court seeking a declaration regarding the contract's status. The company counterclaimed, alleging that the charter amendment election was invalid, and the parties entered into a mutual agreement that the red-light cameras would not be removed during the litigation.[55] In allowing the intervention, the Fifth Circuit explained that "intervenors are unique because they engineered the drive that led to a city charter amendment" and had "a particular interest in cementing their electoral victory and defending the charter amendment itself."[56] Accordingly, in *City of Houston*, the direct result of intervenors' extensive campaigning effort was challenged.

---

[53] *See*, *Arceneaux on Behalf of Rebekka A v. Assumption Parish School Board*, 242 F.Supp.3d 486, 492 (E.D. La. 2017) ("To prevail on a Title IX claim, a plaintiff must prove that: (1) the defendant engaged in intentional discrimination based on gender; and, (2) the defendant received federal financial assistance.") (citing 20 U.S.C. § 1681; *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).

[54] R. Doc. 18-1, ¶ 34.

[55] 668 F.3d at 293.

[56] *Id*. at 294.

Proposed Intervenors argue that while they "did not spend substantial amounts of money" like the intervenors in *City of Houston*, "they did spend a substantial amount of time and energy" and that they "have an interest in their advocate not being retaliated against, in the propriety of the investigation they were involved in, and in seeking justice against [the] Defendants who victimized them."[57]  Those assertions notwithstanding, Proposed Intervenors have not articulated a "'direct, substantial, legally protectable interest"[58] in these proceedings based thereon.  As noted above, Proposed Intervenors have already filed their own lawsuit against Defendants, and presumably will "seek justice against [the] Defendants who victimized them" in that suit.  Further, while the Proposed Intervenors have a generalized interest in the outcome of this lawsuit, especially to the extent Lotief produces evidence regarding the alleged gender inequalities in order to provide context to his allegations that he engaged in protected activity by reporting that inequality, such interest is not one that goes "beyond a generalized preference that the case come out a certain way."[59]  Accordingly, Proposed Intervenors do not have a sufficient "interest relating to the property or transaction that is the subject" of this action so as to support their intervention pursuant to Rule 24(a)(2).[60]

---

[57] R. Doc. 27, pp. 3-4.

[58] *Texas v. U.S.*, 805 F.3d at 657 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)).

[59] *Id.* (internal citations omitted).

[60] *See*, *Gilyard, RN v. Texas Laurel Ridge Hospital, LP*, Cause No. SA-07-CA-650-OG, 2009 WL 10680038, at * 2 (W.D. Tex. Feb. 18, 2009) (finding proposed intervenor could not intervene pursuant to FRCP 24(a) to raise claims of racial discrimination and explaining that "[a]lthough [proposed intervenor] was a participant in the event that led to his and [plaintiff Gilyard's] terminations, he does not have an interest in her cause of action.  While [proposed intervenor] may have his own cause of action for discrimination, he does not have an interest in Gilyard's or Stark's.  Furthermore, his damages are his own and are unaffected by Gilyard's and Stark's claims."  The court additionally noted that the proposed intervenor's own interests "would be protected in a separate suit of his own.  Intervention generally is not appropriate if the movant can protect his interests or recover on his claim through some other means." *Id.* at * 3.).

### B. Permissive Intervention

Pursuant to Fed. R. Civ. P. 24(b), the court may permit anyone, on timely motion, to intervene who "has a claim or defense that shares with the main action a common question of law or fact."[61] In considering whether to allow such intervention, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[62] Additionally, the Fifth Circuit has explained that "[i]n acting on a request for permissive intervention, it is proper to consider, among other things, 'whether the intervenors' interests are adequately represented by other parties' and whether they 'will significantly contribute to full development of the underlying factual issues in the suit.'"[63] "Permissive intervention "is wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied."[64]

Here, and as discussed above, the issues raised in Plaintiff's suit are distinct from those raised in Proposed Intervenors' proposed Complaint in Intervention. Although both suits may raise (either directly with respect to Proposed Intervenors' claims or indirectly with respect to Plaintiff's retaliation claim) whether inequities between men's and women's sports programs

---

[61] Fed. R. Civ. P. 24(b)(1)(B).

[62] Fed. R. Civ. P. 24(b)(3).

[63] *Texas v. U.S.*, 805 F.3d at 472 (citing *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *United States Postal Service v. Brennan*, 579 F.2d 188, 191–92 (2d Cir.1978)). The court further noted that other factors may include the "nature and extent of intervenors' interest" and "their standing to raise relevant legal issues." *Id*. at 472, n. 40 (internal citations omitted).

[64] *NOPSI*, 732 F.2d at 470-471 (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1913 at 551). Although Proposed Intervenors assert "[j]udicial economy will be served by the intervention of Petitioners," R. Doc. 18-2, p. 5, Proposed Intervenors do not explain how the introduction of their independent and distinct lawsuit into this action would be more judicially efficient than allowing both suits to proceed on their own. It seems that rather than being more judicially efficient, allowing this intervention would introduce an undue amount of potential jury confusion and would greatly expand the scope of the evidence, and, potentially, the length of the trial. Proposed Intervenors contend that "[t]he fact that a jury may be less likely to believe the Defendants' pretextual justifications when presented with all the facts is not prejudice; it is justice." R. Doc. 18-2, p. 15. While Plaintiff may seek to call Proposed Intervenors as witnesses in order to present "all the facts" in this suit, such witness testimony is a far cry from introducing Proposed Intervenors wholly separate and distinct claims into the trial of this action.

existed at ULL, this commonality of fact is insufficient to support permissive intervention pursuant to Rule 24(b). Proposed Intervenors seek to insert an *entirely separate* suit into this action, a suit which, by their own admission, they have filed and may continue to pursue independently from this action. Proposed Intervenors assert different claims of retaliation based on different factual allegations occurring at a different time than those set out by Plaintiff.[65] Under these circumstances, allowing this intervention would "magnify the complexity of this proceeding without adding anything beneficial to the proceeding or its resolution."[66] Accordingly, Proposed Intervenors may not permissively intervene pursuant to Rule 24(b).

### III. Conclusion

For the reasons set forth herein, the Motion to Intervene[67] is **DENIED**.

Signed in Baton Rouge, Louisiana, on May 29, 2019.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[65] *See*, *Ramon v. United States Equal Employment Opportunity Commission*, Civ. A. No. H-85-431A, 1986 WL 501, at * 7-8 (S.D. Tex. Nov. 26, 1986) (denying motion to intervene "whether the request to intervene is seen as mandatory under 24(a) or permissive under 24(b)" because "the factual and legal posture [of the plaintiff's and proposed intervenor's] claims is substantially different" and further explaining, with respect to second proposed intervenor, that "[h]e has no stake in or right to any relief arising from the transaction as Plaintiff has presented it. Therefore, there is no reason for intervention under 24(a) or (b).").

[66] R. Doc. 24, p. 16.

[67] R. Doc. 18.